ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BERNICE COLBERT, individually, and for and on behalf of the Heirs at Law of TIMOTHY COLBERT,<br><br>                Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD CO., TYLER DEE BAKER, and LYLE R. MILLER,<br><br>                Defendants. | Case No. 06-4116-JAR |

## MEMORANDUM AND ORDER GRANTING MOTION TO REMAND

The Court now considers plaintiffs' Motion to Remand.  (Doc. 4.)  Plaintiff argues that this case was improperly removed from state court based on federal question jurisdiction.  The motion is now fully briefed and the Court is prepared to rule.  The Court grants plaintiff's motion to remand as described more fully below.

## BACKGROUND

This case arises out of a collision at a private railroad crossing near Wamego, Kansas.  A train owned by Union Pacific Railroad Co. ("Union Pacific") struck Timothy Colbert, who was riding as a passenger in a trash truck that was crossing the train tracks.  Mr. Colbert's personal representative filed a wrongful death action in Pottawatomie district court against Union Pacific, Tyler Dee Baker and Lyle R. Miller.  The Petition alleges that defendants had actual and constructive notice of a number of dangerous and defective conditions at the railroad crossing but failed to correct these conditions, erect warning devices, instruct employees about the

conditions or take otherwise reasonable steps to avoid injury to the public.  Plaintiff alleges that the defendants' failure to correct such dangerous and defective conditions caused Mr. Colbert's death.

In the Petition, plaintiff alleges that defendants breached a number of duties they owed to Mr. Colbert.  Specifically, plaintiff alleges that defendants had a duty to: (1) keep the crossings in good repair, in accordance with K.S.A. § 66-227; (2) maintain adequate warning devices at the crossing and assure that they function properly; (3) comply with the Manual on Uniform Traffic Control Devices governing railroad grades and crossings; (4) operate the train at a safe speed and be prepared to slow or stop for known hazards, as well as keep a proper lookout; and (5) adequately instruct, train and test members of the operating department on the safe operation of trains at crossings.

Defendants removed the action to this Court, claiming federal question jurisdiction under one of two theories: (1) several claims in the Petition are completely preempted by the Federal Railroad Safety Act ("FRSA"); or (2) the Petition raises a substantial federal question that is actually in dispute and federal jurisdiction does not threaten any congressionally determined federal-state division of labor.[1]

## DISCUSSION

Only state court actions that could have originally been filed in federal court are removable.[2]  The court is required to remand "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[3]  As the party invoking the federal court's

---

[1] *See, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

[2] 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[3] *Id.* § 1447(c).

2

jurisdiction, defendants carry the burden of demonstrating that the requirements for exercising jurisdiction are present.[4]  Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction,[5] and requires a court to deny its jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.[6]  "Doubtful cases must be resolved in favor of remand."[7]

There are two statutory bases for federal subject matter jurisdiction.  First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist.  Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction.  In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[8]

Defendants removed this action on the basis of federal question jurisdiction.  In order to determine whether a claim "arises under" federal law, the Court refers to the "well-pleaded complaint rule."[9]  That rule provides that "federal jurisdiction exists only when a federal

---

[4]*See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted), *aff'd*, 126 S. Ct. 704 (2005).

[5]*Frederick & Warinner v. Lundgren*, 962 F. Supp. 1580, 1582 (D. Kan. 1997) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)).

[6]*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[7]*Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) (further citations omitted)).

[8]28 U.S.C. § 1367.

[9]*See Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006).

question is presented on the facts of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[10]  The Court is equally mindful of the "artful pleading doctrine," which disallows a plaintiff from defeating removal by failing to plead federal questions even though they are essential elements of the plaintiff's claim.[11]  With this in mind, the Court turns to the potential grounds for federal question jurisdiction in this case: (1) complete preemption; and (2) the substantial federal question doctrine.

### A.  *Complete Preemption*

While conceding that plaintiff's Petition does not allege a federal claim, defendants argue that several of plaintiff's claims are completely preempted by the FRSA[12] under the artful pleading doctrine.  Removal is not appropriate on the basis of a federal defense, including preemption,[13] but complete preemption functions as an exception to the well-pleaded complaint rule.[14]  Under the complete preemption doctrine, "federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are *preempted* by federal law."[15]  Complete preemption, as opposed to ordinary preemption, describes "the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of

---

[10]*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).

[11]*Turgeau*, 446 F.3d at 1060 (citing *Caterpillar*, 482 U.S. at 392).

[12]49 U.S.C. §§ 20101–20153.

[13]*Caterpillar*, 482 U.S. at 392–93; *Felix v. Lucent Techs, Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)), *cert. denied*, 545 U.S. 1149 (2005).

[14]*Caterpillar*, 482 U.S. at 393; *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1264 n.1 (10th Cir. 2004).

[15]*Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (emphasis in original).

action for the state cause of action, thereby manifesting Congress's intent to permit removal."[16]

The Supreme Court has recognized complete preemption as to three federal laws: (1) the Employee Retirement Income Security Act of 1974 ("ERISA");[17] (2) the Labor Management Relations Act ("LMRA");[18] and (3) the National Bank Act.[19]  In *Beneficial National Bank v. Anderson*, the Court explained it had found complete preemption in two categories of cases—"certain causes of action under the LMRA and ERISA,"—and that both of those statutes "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action."[20]  Because the Court found that Congress intended for the National Bank Act to provide the exclusive causes of action for claims asserting usury against national banks, it held those claims completely preempted, and thus, removable.[21]

The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."[22]  The FRSA contains both an express preemption clause and a savings clause:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.  A State may adopt or continue in force a law, regulation, or order related to railroad

---

[16]*Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996)

[17]*See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

[18]*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557 (1968).

[19]*Beneficial Nat'l Bank*, 539 U.S. at 1.  The Court in *Beneficial* also recognized its prior holding that federal courts have subject matter jurisdiction over possessory land claims brought under state law by Indian tribes. *Id.* at 8 n.4 (citing *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 667 (1974)).

[20]*Beneficial Nat'l Bank*, 539 U.S. at 8 (citing 29 U.S.C. §§ 185, 1132); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 275–76 (2d Cir. 2005)..

[21]*Beneficial Nat'l Bank*, 539 U.S. at  9–11.

[22]49 U.S.C. § 20101.

>safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
>
>(1) is necessary to eliminate or reduce an essentially local safety or security hazard;
>(2) is not incompatible with a law, regulation, or order of the United States Government; and
>(3) does not unreasonably burden interstate commerce.[23]

The Court looks both to Congress's and the Secretary of Transportation's intent in promulgating the FRSA and its regulations to determine if they intended for the statute to provide for the exclusive federal remedy in cases such as this.[24]

Unlike the provisions at issue in ERISA, the LMRA, and the National Bank Act, the FRSA savings clause provides evidence that Congress did not intend for the regulations to provide an exclusive federal remedy for cases involving railroad-related accidents, at least not when there is an applicable state law that is either additional or more stringent under the conditions set forth in the statute.  "[T]he existence of this type of 'savings' clause which 'contemplate[s] the application of state-law and the exercise of state-court jurisdiction to some degree . . . counsels against a conclusion that the purpose . . . was to replicate the 'unique preemptive force' of the LMRA and ERISA."[25]

---

[23]*Id.* § 20106.

[24]*See Beneficial Nat'l Bank*, 539 U.S. at 9–10; *see also* § 20106; *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993); *Peters v. Union Pac. R.R.*, 455 F. Supp. 2d 998, 1001–03 (W.D. Mo. 2006).

[25]*Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (quoting *BLAB T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 855 (11th Cir. 1999)); *see also Kuntz v. Ill. Ctl. R.R.*, 469 F. Supp. 2d 586 (S.D. Ill. 2007); *Russell v. Sprint Corp.*, 264 F. Supp. 2d 955, 961 (D. Kan. 2003).

Moreover, the FRSA does not provide a federal remedy for the claims asserted in this case. Defendants characterize plaintiff's claims in the Petition as follows: (1) Union Pacific negligently maintained and inspected its track, crossing and right-of-way; (2) Union Pacific negligently trained, instructed, and tested its employees responsible for track inspection and the maintenance of its track, crossing, and right-of-way; (3) Union Pacific failed to adequately instruct, train, and test members of its operating department; and (4) defendants failed to operate the train at a safe speed for then existing conditions. Plaintiff disagrees with these characterizations of the claims made in the Petition and urges that the wrongful death claim is based on alleged duties concerning *private* railroad crossings, which are not covered by the regulations relied on by defendants.

The Court agrees that the majority of the Petition pertains solely to defendants' duties at the private railroad crossing at issue in this case. Defendants' attempt to classify the claims as negligent maintenance and inspection of tracks is simply inaccurate. Plaintiff argues that Union Pacific failed in its duty to keep the *crossings* it owned in good repair, to maintain adequate warning devices at the *crossings*, to comply with the Manual on Uniform Traffic Control Devices[26] governing railroad *crossings*, and to adequately instruct, train and test employees on the safe operation of trains at *crossings*. Plaintiff refers the Court to a Department of Transportation and Federal Railroad Administration ("FRA") Notice in the Federal Register that highlights the lack of regulation of private crossings, as opposed to public crossings.[27] The purpose of the Notice is for the FRA to announce its intent to conduct open meetings throughout

---

[26]23 C.F.R. § 655.

[27]Notice of Safety Inquiry, 71 Fed. Reg. 42713 (July 27, 2006).

the United States concerning safety at private highway-rail grade crossings.[28]  In this Notice, the FRA summarizes the extent of regulation of private crossings:

> In general, private crossings are not subject to regulation at the State or Federal level.  FRA's requirements for inspection, test and maintenance of active warning devices (49 CFR part 234) apply to the railroad where active warning has been installed; but there is no Federal mandate for providing such warning.  A handful of States require that railroads place crossbucks or special signage (in some cases a stop sign and a crossbuck on the same post) at private crossings.  The subject of private crossings is otherwise largely unregulated.  Accordingly, such recognized responsibilities as exist with respect to the safety of private crossings are generally the product of contracts and common law.[29]

The Court finds this Notice instructive as to whether federal regulations apply to private railroad crossings.  As the Notice makes clear, federal law does not generally regulate private crossings.  Instead, the duties are usually derived from contracts or the common law.

In support of their argument that a claim of negligent training, instruction, and testing of employees on the safe operation of trains at private crossings is preempted, defendants cite 49 C.F.R. §§ 212.203, 213.7, 213.233, and 213.305.  But these regulations all deal with maintenance and inspection of railroad tracks.[30]  Plaintiff does not assert that defendants breached duties by violating these regulations.  Section 212.203 prescribes certain qualifications for state track inspectors.  Likewise, Part 213 governs track safety standards.  None of these

---

[28]*Id.*

[29]*Id.*; *see generally* Federal Railroad Administration, Compilation of State Laws and Regulations Affecting Highway-Rail Grade Crossings, at iv (3d ed. 2000) ("Most aspects of jurisdiction over highway-rail grade crossings resides with the states. . . .").

[30]*See* 49 C.F.R. § 212.203 (prescribing minimum qualifications for State railroad track inspectors); § 213.7 (prescribing qualifications for persons who supervise restorations and renewal of track, and to persons who inspect track for defects); § 213.233 (governing track inspections); § 213.305 (providing for designation of qualified individuals who are responsible for maintenance and inspection of track in compliance with safety requirements prescribed in the regulations).

regulations are applicable to the claims asserted in plaintiff's Petition. Defendants further argue that the failure to instruct, train and test employees on the safe operation of trains at private crossings is preempted, specifically referring the Court to 49 C.F.R. Parts 217, 218, and 240. But none of these regulations discuss the duty that may be owed or the standards that apply to private railroad crossings.[31]

The only duty alleged in the Petition that does not specifically relate to private railroad crossings is the "duty to operate the train at a speed safe for then existing conditions and . . . to slow or stop for any known hazards."[32] In *CSX Transportation, Inc. v. Easterwood*,[33] an ordinary conflict preemption case, the Supreme Court found that federal regulations setting maximum allowable operating speeds for trains cover the same subject matter "with respect to track conditions, including the conditions posed by grade crossings."[34] The case left open, however, whether an excessive speed claim is preempted when it is for breach of "related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard,"[35] such as the claim asserted here.

At best, even assuming the cited regulations applied here, they would establish ordinary conflict preemption and not complete preemption. The two are distinct concepts that have

---

[31] *See* 49 C.F.R. Parts 217 (providing railroad operating rules); 218 (providing railroad operating practices); 240 (providing qualification and certification standards of locomotive engineers); *see also* Notice of Safety Inquiry, 71 Fed. Reg. 42713 (July 27, 2006).

[32] (Doc. 1, Ex. A ¶ 10.)

[33] 507 U.S. 658 (1993).

[34] *Id.* at 675.

[35] *Id.* n.15 ("this case does not present, and we do not address, the question of FRSA's pre-emptive effect on such related claims."); *see Peters v. Union Pac. R.R.*, 455 F. Supp. 2d 998, 1002–03 (W.D. Mo. 2006);

seemingly been conflated by defendants.[36]  "'[C]omplete preemption' analysis and ordinary preemption analysis are not fungible."[37]  And the distinction between the two is important because if complete preemption "does not apply, but the plaintiff's state claim is arguably preempted . . . the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks the power to do anything other than remand to the state court where the preemption issue can be addressed and resolved."[38]

Defendants fail to point the Court to sufficient evidence that Congress or the Secretary of Transportation intended to provide for an exclusive federal cause of action in this case.  Defendants argue that the lack of a private right of action does not preclude a finding of complete preemption under *Nicodemus v. Union Pacific Railroad*.[39]  In *Nicodemus*, the Tenth Circuit discussed whether there was federal question jurisdiction despite the absence of a private remedy in the statute that the defendants claimed presented a contested and substantial federal issue.[40]  The court explicitly noted that complete preemption—the one exception to the well-pleaded complaint rule—was not implicated in the case.[41]  Instead, the Court proceeded to determine whether it had jurisdiction under the substantial federal question doctrine.  This Court does not find that *Nicodemus*, a case dealing solely with the substantial federal question doctrine,

---

[36]*See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1156 (10th Cir. 2004), *cert. denied*, 545 U.S. 1149 (2005); *Meyer v. Conlon*, 162 F.3d 1264, 1268 n.2 (10th Cir. 1998); *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1118–19 (10th Cir. 1991); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 275–76 (2d Cir. 2005).

[37]*Meyer*, 162 F.3d at 1268 n.2; *Sullivan*, 162 F.3d at 272.

[38]*Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 354 (3d Cir. 1995), *cert. denied*, 516 U.S. 1009 (1995); *accord Felix*, 387 F.3d at 1158; *Kuntz v. Ill. Ctl. R.R.*, 469 F. Supp. 2d 586, 594 (S.D. Ill. 2007).

[39]440 F.3d 1227 (10th Cir. 2006) (construing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct 2563 (2005)).

[40]*Id.* at 1232.

[41]*Id.* n.4.

alters the complete preemption analysis.[42]  The *Nicodemus* court explained that the presence or absence of a private right of action in the context of the substantial federal question doctrine is helpful in determining Congress's "intended division of labor between state and federal courts."[43]  Under a complete preemption analysis, the Court is more concerned with whether Congress intended for an exclusive federal remedy.[44]

Finally, the Court will briefly discuss the Eighth Circuit Court of Appeals' decision in *Lundeen v. Canadian Pacific Railway Co*,[45] which the parties discuss at length in their briefs.  Defendants urge the Court to follow the *Lundeen* court's reasoning and find that plaintiff's claims are completely preempted.  *Lundeen* involved claims made against a railroad for negligent inspection of its tracks that resulted in a train derailment.  In determining that the claim was completely preempted by the FRSA, the Eighth Circuit analysis "turns first on the Secretary of Transportation's regulations 'covering the subject matter of the State Requirement' and then any given regulation's solicitude for state law."[46]  The court determined that federal regulations govern track inspection protocols and "establish a national railroad safety program."[47]  Moreover, because the regulations at issue did not contain savings clauses, the court found that

---

[42]*See Sullivan v. BNSF Ry. Co.*, 447 F. Supp. 2d 1092, 1099 (D. Ariz. 2006).

[43]*Nicodemus*, 440 F.3d at 1233, 1233 n.5.

[44]As the court indicated in *Schmeling v. NORDAM*, this does not dispose of the merits of any preemption defense that could be raised in state court.  97 F.3d 1336, 1345 (10th Cir. 1996).

[45]447 F.3d 606 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1149 (2007).

[46]*Id.* at 613 (comparing *Chapman v. Lab One*, 390 F.3d 620, 626–27 (8th Cir. 2004), where the court found no preemption of claims concerning drug testing under the FRSA regulations because they do not establish an intent to preempt, with *Peters v. Union Pac. R.R.*, 80 F.3d 257, 261 (8th Cir. 1996), where the court found complete preemption because the FRSA regulations set out a "comprehensive administrative adjudication system for handling certification disputes.").

[47]*Id.* at 614.

11

complete preemption applied.[48]

Without commenting on whether this Court should or should not follow the reasoning set forth in this Eighth Circuit decision, *Lundeen* is not applicable to the claims made in this case. First, *Lundeen* involved a negligence claim due to a train derailment for negligent inspection of railroad tracks. As discussed earlier, despite defendants' characterization of the Petition, this case does not allege claims related to the operation or maintenance of the train track, but rather the private railroad crossing where the collision took place. *Lundeen* requires a complete preemption analysis that turns on the federal regulation at issue. Here, none of the federal regulations cited by defendants appear to cover the subject matter of private railroad crossings. Under the reasoning set forth in *Lundeen*, a district court in the Eighth Circuit would have difficulty finding complete preemption given the dearth of federal regulation over private railroad crossings. Second, none of the cases applying *Lundeen* have found that all claims that involve the FRSA are preempted, but instead, analyze the specific regulations at issue to determine whether they preempt state law and whether they have a savings clause.[49] Again, given the lack of federal regulations governing the claims made in this case, *Lundeen* does not dictate a finding of complete preemption and therefore, removal is not appropriate on this basis.

---

[48]*Id.* at 615.

[49]*Connolly v. Union Pac. R.R.*, 453 F. Supp. 2d 1104, 1111 (E.D. Mo. 2006) (finding no comprehensive regulatory scheme that preempted wrongful death action surrounding failure to maintain the railway crossing and right of way); *Peters v. Union Pac. R.R.*, 455 F. Supp. 2d 998, 1001–03 (W.D. Mo. 2006) (explaining that *Lundeen* does not stand for the proposition that all state law claims based in part on FRSA regulations are completely preempted under 49 U.S.C. § 20106); *Olberding v. Union Pac. R.R.*, 454 F. Supp. 2d 884, 887 (W.D. Mo. 2006) (finding complaint made the same allegations as complaints in *Lundeen* and *Gillenwater*); *Gillenwater v. Burlington N. & Santa Fe Ry. Co.*, No. 05CV2011 RWS, 2006 WL 1699362, at *2 (E.D. Mo. June 13, 2006) (citing, amongst others, regulations concerning railroad crossing warning devices at public crossings); *cf. Hodge v. Burlington N. & Santa Fe Ry. Co.*, 461 F. Supp. 2d 1044, 1052–54 (E.D. Mo. 2006) (finding some claims preempted and others not so court exercised supplemental jurisdiction over those not preempted); *Kutilek v. Union Pac. R.R.*, 454 F. Supp. 876, 883–85 (E.D. Mo. 2006) (same).

### B. *Substantial Federal Question*

Defendants argue that removal is also appropriate under the substantial federal question doctrine. Under the well-pleaded complaint rule, if "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,'" then it "arises" under federal law within the meaning of 28 U.S.C. § 1331.[50]

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.[51]

The United States Supreme Court has characterized this basis for jurisdiction as a "special and small category."[52] "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[53]

Defendants argue that the allegations in plaintiff's Petition are "inextricably intertwined with the regulations passed by the FRA under the authority of the FRSA and therefore involve disputes concerning federal law."[54] As this Court has already determined, the federal regulations referred to by defendants do not apply to the specific claims made by plaintiff concerning speed or private railroad crossings. The Court has already addressed that private railroad crossings are

---

[50] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2135 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

[51] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citation omitted).

[52] *McVeigh*, 126 S. Ct. at 2136.

[53] *Grable & Sons*, 545 U.S. at 313.

[54] (Doc. 9 at 13.)

largely regulated by the states and not the federal government. The FRA Notice evidences the lack of a national regulatory scheme governing private railroad crossings.

Defendants refer, without discussion, to other parts of Title 49 of the Code of Federal Regulations that they argue must be interpreted under plaintiff's claims, specifically Parts 212, 213, 217, 218, 221, and 240. But the Court fails to see how plaintiff's wrongful death claims depend on the interpretation of these regulations. In short, defendants fail to identify what federal law becomes an essential element of plaintiff's case in this matter. *Grable & Sons Metal Products., Inc. v. Darue Engineering & Manufacturing*, the leading Supreme Court case on this issue, required a resolution of whether a federal agency had violated federal law; specifically, the issue of whether the plaintiff was given notice by the IRS within the meaning of a federal statute, was deemed an essential element of the plaintiff's quiet title claim.[55] No such issue must be resolved as an essential element of this plaintiff's claim. As discussed above, whether conflict preemption applies in this case is a defense and under the well-pleaded complaint rule, not a valid basis upon which to remove a state cause of action. And if the state court were to determine that the claims were preempted by federal regulations, this would require dismissal, and not an interpretation of federal law.

Plaintiff does not claim, under the well-pleaded complaint rule, that federal regulations create a duty defendants owed to plaintiff in this case. And even if the Petition was construed to make such a claim, this would not be sufficient to invoke the substantial federal question doctrine. The Supreme Court, as well as cases from other districts, have made this clear.[56]

---

[55] 545 U.S. at 315.

[56] *Id.* at 318–19; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S 804, 811–12 (1986); *see also Fuller v. BNSF Ry. Co.*, __F. Supp. 2d__, 2007 WL 403853, at *2–3 (S.D. Ill. Jan. 3, 2007) (collecting cases); *Sullivan v. BNSF Ry. Co.*, 447 F. Supp. 2d 1092, 1099 (D. Ariz. 2006).

Moreover, although defendants are correct that there is no bright-line rule that the absence of a federal private right of action disposes of jurisdiction on this basis, the Supreme Court and the Tenth Circuit have made clear that it is relevant to the "'sensitive judgments about congressional intent' that § 1331 requires."[57]  Specifically, the Supreme Court explained that the absence of a federal private right of action was primarily important in its *Merrell Dow Pharmaceuticals, Inc. v. Thompson* decision, when viewed in conjunction with the lack of a preemption of state remedies clause in that case.[58]  Therefore, instead of a prerequisite, the Court viewed it as a "missing welcome mat."[59]  The Supreme Court has explicitly pointed to state law tort cases where the violation of federal statutes is presumed negligence per se, as an example of how the lack of a private right of action is important in determining legislative intent.[60]  The Court was concerned over the "increased volume of federal litigation," and "thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law."[61]

Finally, the Court finds that providing a federal forum for the resolution of this case and others like it would "disrupt the division of labor between state and federal courts."[62]  "[I]t is the

---

[57]*Grable & Sons*, 545 U.S. at 318. (quoting *Merrell Dow*, 478 U.S. at 810); *Nicodemus v. Union Pac. R.R.*, 440 F.3d 1227 (10th Cir. 2006).

[58]*Grable & Sons*, 545 U.S. at 318.

[59]*Id.*

[60]*Id.* at 318–19; *Merrell Dow*, 478 U.S. at 811–12.

[61]*Id.* at 319 (quoting *Merrell Dow*, 478 U.S. at 811–12) (internal quotations omitted).

[62]*Id.* at 313.

15

rare case arising from a collision between a train and a motorist at a railroad crossing that does not present issues regarding preemption of state law by regulations promulgated pursuant to the FRSA."[63]  In sum, the Court does not find this case to represent the rare occasion when jurisdiction based on the substantial federal question doctrine is appropriate.[64]  As such, the Court grants plaintiff's Motion to Remand and remands this case back to the Pottawatomie County District Court.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' Motion to Remand (Doc. 4) is **granted**.  The case shall be remanded back to the Pottawatomie County District Court.

**IT IS SO ORDERED**.

Dated this 30th   day of April 2007.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[63]*Kuntz v. Ill. Ctl. R.R.*, 469 F. Supp. 2d 586, 598 (S.D. Ill. 2007); *see also e.g.*, *Peters v. Union Pac. R.R.*, 455 F. Supp. 2d 998, 1001–03 (W.D. Mo. 2006).

[64]*See, e.g.*, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2137 (2006) ("This case cannot be squeezed into the slim category *Grable* exemplifies.").